TIMOTHY M. SPELMAN et al., Respondents, *v.* MORITZ FREEDMAN et al., Impleaded, etc., Appellants.

A *cestui que trust* is not required to establish his claim by an action at law in order to compel an enforcement of the trust, or to protect the trust property from unlawful interference.

Under the provision of the act of 1887 (§ 30, chap. 503, Laws of 1887), prohibiting preferences in a general assignment beyond a certain amount, whatever is done in connection with, or in contemplation of, the assignment, with intent to defeat the operation of the statute, is within the spirit of its prohibition.

In an action brought by plaintiffs, as general creditors of defendant S., to set aside certain judgments confessed by her, together with execu-

tions issued thereon and levies made thereunder, as in violation of said act, the complaint alleged in substance that S., a few hours before she made an assignment, in contemplation thereof and for the purpose of giving preferences in fraud of the assignment, confessed the judgments in question; that immediately after the entry thereof executions were issued upon them, which, just before the delivery of the assignment, were levied upon all her property, and that the same was not worth three times the amount of the judgments; that said executions were issued and levies made in contemplation of the assignment, and for the purpose of preferring the judgment creditors, in fraud of the assignment; also that the assignee, upon being requested, had refused to bring suit to set aside the judgment. From the assignment and the judgment-rolls, copies of which were annexed to the complaint, it appeared that the debts for which the judgments were confessed were preferred in the assignment, they being the only preferences, except wages, etc., of the employes of the assignor. Upon demurrer to the complaint, defendants claimed that, as plaintiffs were not judgment creditors, they had no standing in court to maintain the action. *Held*, untenable, as plaintiffs were not seeking to attack the assignment, but, as beneficiaries of the trust, were seeking to uphold and enforce it; that such an action was maintainable by any creditor, whether a judgment creditor or a creditor at large.

Defendants, the judgment creditors, also claimed the complaint to be insufficient, as it did not allege that they knew S. intended to make an assignment. *Held*, untenable, as the complaint alleged that the acts of the judgment creditors, *i. e.*, the issuing of executions and the levies thereunder, as well as the acts of their debtor, were in contemplation, and in fraud, of the assignment.

Reported below, 54 Hun, 409.

(Argued December 14, 1891; decided January 20, 1892.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 7, 1889, which affirmed an interlocutory judgment entered upon the decision of the court at Special Term, overruling a demurrer to the complaint herein.

This action was brought by the plaintiffs, as general creditors of the defendant Josephine M. Soussman, to set aside three judgments confessed by her in favor of certain of the other defendants, together with the executions issued thereon and levies made thereunder, as in violation of the statute restricting preferences in general assignments for the benefit

of creditors. (Laws 1887, chap. 503.) Several of the judg-
ment creditors demurred upon the ground that the complaint
did not state facts sufficient to constitute a cause of action.

The General Term affirmed the interlocutory judgment of
the Special Term, overruling such demurrers, but certified
that the question involved was of sufficient importance to ren-
der a decision by this court desirable before proceeding further.
(Code Civ. Pro. § 190, par. 4.)

The facts, so far as material, appear in the opinion.

*Alex. Blumensteil* for appellants. There being no allega-
tion in the complaint that Freedman Brothers, the appellants
and judgment creditors, knew that the debtor was insolvent
or that she intended to make a general assignment, no cause
of action was made out. (*Manning* v. *Beck*, 129 N. Y. 1.)
The plaintiffs have no standing in court to bring this action.
(*Southard* v. *Benner*, 72 N. Y. 424, 426, 427; *Geery* v.
*Geery*, 63 id. 256; *Adsit* v. *Butler*, 87 id. 585; *Bowe* v.
*Arnold*, 31 Hun, 256; *Sullivan* v. *Miller*, 106 N. Y. 635,
641; *Button* v. *Rathbone*, 43 Hun, 147.)

*John W. Boothby* for respondents. The plaintiffs, as general
creditors of the defendant Soussman, the assignor, can prop-
erly maintain this action. (*Dewey* v. *Moyer*, 72 N. Y. 78;
*Bate* v. *Graham*, 11 id. 237; 14 How. [U. S.] 29; *Crouse*
v. *Frothingham*, 97 N. Y. 113; *Shyer* v. *Lockhard*, 2 Tenn.
Ch. 365; *Weir* v. *Tannehill*, 2 Yerg. 57; *Goncelier* v. *Foret*,
4 Minn. 13; *McDougald* v. *Dougherty*, 11 Ga. 570; *Jones*
v. *Dougherty*, 10 id. 273; *Hayes* v. *Doane*, 11 N. J. Eq.
84; *Holt* v. *Bancroft*, 30 Ala. 193; *Kellogg* v. *Root*, 23
Fed. Rep. 525; *White* v. *Cotzhausen*, 129 U. S. 329; *Spring*
v. *Short*, 90 N. Y. 546.) The judgments entered by con-
fession, including that of the appellants, Freedman Brothers,
were confessed and entered, the executions issued and levies
made in contemplation of the assignment, and as a part of the
scheme of the failure, for the purpose of preferring those fav-
ored creditors for more than the law allowed, and are, there-
fore, fraudulent and void as against the assignee. (Laws of

1887, chap. 503; *Richardson* v. *Thurber*, 104 N. Y. 606; Laws of 1884, chap. 328; *Preston* v. *Spulding*, 120 Ill. 208; *White* v. *Cotzhausen*, 127 U. S. 329; *Berry* v. *Cutts*, 42 Me. 445; *Van Patten* v. *Burr*, 52 Iowa, 518; *Fuller* v. *Hasbrouck*, 46 Mich. 81; *Perry* v. *Holden*, 39 Mass. 277; *Livermore* v. *McNair*, 34 N. Y. Eq. 478; *Caryl* v. *Russel*, 13 N. Y. 194; *Bell* v. *Leggett*, 7 id. 176.)

VANN, J. The plaintiffs were general creditors of the defendant Soussman on the 14th of May, 1888, when she made a general assignment of all her property for the benefit of her creditors to the defendant Phillips, who accepted the same and it was thereupon recorded in the office of the clerk of the city and county of New York, at a quarter past twelve in the afternoon of that day. A few hours before, Mrs. Soussman, being insolvent, confessed a judgment in favor of the defendants Jaffrey and others for the sum of $2,110.80; a second, in favor of the defendant Sigisman for $2,056.38, and a third, in favor of the defendants Freedman for $2,802.27, and the respective judgment-rolls were filed in said clerk's office at seven, eight and nine minutes past ten in the forenoon of the day on which said assignment was made and recorded. Immediately after the entry of said judgments, executions were issued thereon against the property of Mrs. Soussman to the defendant Grant, as sheriff, who by virtue thereof, just before the delivery of said assignment, levied upon all her property, which was not worth three times the amount of said judgments. After setting forth the foregoing facts the complaint further alleged " that the said judgments were confessed and the said executions issued and levies made, in contemplation of the said assignment and for the purpose of preferring the said persons in whose favor the said judgments were confessed out of the property of the said defendant Soussman, in fraud of the said assignment, for more than one-third of the net assets of the said defendant Soussman and to prevent the said assets from going into the hands of the defendant Phillips as such assignee, and being distributed to the plaintiffs and the

other creditors of the said defendant Soussman, pursuant to the statute in such cases made and provided and pursuant to the provisions of the said assignment, and are fraudulent and void as against the defendant Phillips, as assignee."

It was further alleged that the assignee, after due notice of the facts, refused to bring an action to set aside said judgments, executions and levies, although requested by the plaintiffs so to do. The relief demanded was that the judgments, executions and levies be declared void as to the assignee; that the sheriff be directed to turn over the property levied upon by him to the assignee; that the proceeds thereof be applied pursuant to the terms and conditions of said assignment, and that all of the defendants, except the assignee be restrained from disposing of or interfering with the property so levied upon.

A copy of the assignment and of the several rolls of the confessed judgments were annexed to and made a part of the complaint, from which it appeared that the debts for which such judgments were recovered were preferred in the assignment and that they were the only preferences therein, except wages and salaries actually owing to the employes of the assignor.

In support of their demurrer, the defendants contend that as the plaintiffs are not judgment creditors of the assignor, they have no standing to maintain an action of this character. If this were an ordinary creditor's suit, brought to set aside the assignment as a fraudulent obstruction to the rights of the plaintiffs, it would be necessary for them to allege that they had exhausted their remedy at law. It is well settled that a simple contract creditor cannot attack, as fraudulent, the transfer by his debtor of property applicable to the payment of the debt, until after the recovery of judgment, the issue and levy of an execution, or its return unsatisfied. (*Dunlevy* v. *Tallmadge*, 32 N. Y. 457; *Adee* v. *Bigler*, 81 id. 349; *Adsit* v. *Butler*, 87 id. 585; Wait on Fraudulent Conveyances and Creditor's Bills, 106; Code C. P. § 1871; 2 R. S. 173.)

The plaintiffs, however, do not attack the assignment, but seek to uphold and enforce it. Their theory is that it is a valid instrument and that it vested in the assignee the legal title to all the

property of the assignor.  They rest upon the assignment, making their action subsidiary and not hostile thereto, and aim to protect the property in the hands of the assignee, as they claim he should have protected it, to the end that its proceeds may be distributed by him according to the provisions of the assignment.  As beneficiaries under the trust they are trying to have it enforced, through the assignee, by taking such action as they allege he should have taken, not for their exclusive advantage, but for the benefit of all similarly situated. They do not seek to discover assets or to obtain a lien, but to cause certain effects in which they have an interest to be administered and distributed according to the assignment without spoliation or waste.  A *cestui que trust* is not required to establish his debt by an action at law in order to compel an enforcement of the trust, or to protect the trust property from unlawful interference.  As the plaintiffs acknowledge the validity of the assignment and come in under it, what use could they make of a judgment if they had one?  If they were in a situation to issue an execution it would be improper for them to levy upon the assigned property.  What could they do in aid of the assignment with, that they cannot as well do without a judgment recovered and execution returned? Their ultimate right to share in the assets and the refusal of the assignee to bring an action that is necessary for the protection of the assets, gives them the right to bring it as auxiliary to the trust.  His right to maintain an action depends on the act of 1858 (L. 1858, ch. 314), and their right comes through his refusal to sue.  As he can sue for the benefit of simple contract creditors (*Southard* v. *Benner*, 72 N. Y. 424), why cannot simple contract creditors sue, making him a party, upon his refusing to sue in their behalf?  What reason is there for limiting action to judgment creditors, when creditors at large have an equal right to share in the benefits?  What virtue is there in a judgment as the basis of an action, when it is not needed in order to fully share in the fruits of the action?  The line of reasoning suggested by these inquiries finds support in the authorities, which recognize a distinction between an action

of this kind and a creditor's bill. The function of a creditor's bill is to establish and enforce a lien upon property alleged to belong to the debtor, to take it from the possession of whomsoever may claim to own it and to cause it to be sold to pay the judgment creditor's debt, who thus obtains an advantage over all the other creditors. It is exclusive in object and result and benefits the active at the expense of the inactive creditor. It is necessarily hostile to a general assignment which it must destroy in order to succeed as to any property transferred thereby. (*Loos* v. *Wilkinson*, 110 N. Y. 195.)

The act of 1858 authorized a new class of actions, analogous in many respects to creditor's bills, to be brought for the benefit of all the creditors alike, by the assignee or other representative of an insolvent estate, to set aside fraudulent transfers by the debtor. Such actions require no lien, but are maintainable by force of the statute. (*Southard* v. *Benner*, *supra* ; *Reynolds* v. *Ellis*, 103 N. Y. 116, 123.) When the assignee neglects or refuses to bring such an action, after notice of the facts, as was declared by this court in *Dewey* v. *Moyor* (72 N. Y. 70, 78), " it is abundantly established that the creditors may commence an action to reach the property (fraudulently transferred), making the assignee, the debtor and his transferees parties defendant." So in *Crouse* v. *Frothingham* (97 N. Y. 105, 113), it was said that if the " assignee refuses in a proper case to proceed and get in the assigned property, the creditors collectively, or one in behalf of all who may come in and join, may compel the execution of the trust in equity." While in the cases cited the actions were brought by judgment creditors it was not intimated that this was essential, and we find no case that so holds.

We think that the action can be maintained by any of the creditors who would be benefited by the result, including both judgment creditors and creditors at large. (*Harvey* v. *McDonnell*, 113 N.Y. 526 ; *Preston* v. *Spaulding*, 120 Ill. 208, 214 ; *Goncelier* v. *Foret*, 4 Minn. 1 ; *Holt* v. *Bancroft*, 30 Ala. 193, 204 ; *McDougald* v. *Dougherty*, 11 Ga. 570 ; *Weir* v. *Tannehill*, 2 Yerger, 57 ; 2 Barb. Ch. 149.)

The appellants further contend that their demurrer should be sustained, because it does not appear from the complaint that they knew that the assignor intended to make an assignment.

The act of 1887 changed the policy of the state with reference to preferences in general assignments. (L. 1887, ch. 503, § 30.) Prior to the passage of that act there was no restriction upon the power of an insolvent debtor to give such preferences as he chose when making an assignment, either by that instrument alone, or by other transfers in connection with it. The object of the act was to change the law by placing a limit to the power to prefer in a general assignment, and it should be liberally construed, as has been held in relation to similar statutes, "so as to suppress the mischief and advance the remedy." (*White* v. *Cotzhausen*, 129 U. S. 329, 441; *Preston* v. *Spaulding*, 120 Ill. 208; *Appeal of Miners' National Bank*, 57 Pa. St. 193, 200.)

Accordingly the assignor should not be allowed to subvert the statute by artifice or evasion, especially when the creditor preferred participated in the unlawful design. Whatever is done in connection with, or in contemplation of the assignment, with the intent to defeat the operation of the statute, falls within the spirit of its prohibition and should receive the condemnation of the courts. When the assignment is part of a scheme to circumvent the law, and judgments are confessed by the debtor, executions issued thereon by the creditors and levies made upon the property of the debtor in their behalf, as parts of the same scheme, it is the duty of the courts to see that the object of the legislature is not defeated by such acts, which although not a part of the assignment, are done in contemplation of it and with the intent of both debtor and creditor to frustrate the statute. Such is the case made against the defendants by the complaint as we construe it. It appears from that part of the complaint already quoted that the "Judgments were confessed * * * in contemplation of the said assignment, and for the purpose of preferring the said persons in whose favor the said judgments were confessed, out of the property of the said defendant Soussman in fraud of the

said assignment, etc." Those were the acts and this the intent of the debtor. But it is also as distinctly alleged that "the said executions (were) issued and levies made in contemplation of the said assignment and for the purpose of preferring \* \* \* in fraud of the said assignment \* \* \* and to prevent the said assets from going into the hands of the \* \* \* assignee and being distributed \* \* \* pursuant to the statute \* \* \* and pursuant to \* \* \* the assignment, etc." These were the acts and this the intent of the judgment creditors. All the transactions which the plaintiffs seek to set aside are alleged to have been done in contemplation of, as well as in fraud of, the assignment, and with the intent to prevent a distribution of the property of the assignor according to the assignment and the statute. The debtor confessed the judgments and the creditors issued the executions and caused the levies to be made, participating in the same fraudulent purpose and jointly contemplating, that is, expecting or looking forward to, the assignment as about to be made. The connection between the assignment and the acts alleged to be illegal is emphasized by the preference in the former of the same debts for which the judgments were confessed, so that if the judgments are set aside the judgment debtors will still be preferred to the extent of one-third of the assets of the assignor, or all that the law allows. Their effort to secure more than this by a palpable evasion of the statute should not succeed, and the instrumentalities employed to effect that object have been properly adjudged void by the judgment of the courts below. (*Berger* v. *Varrelmann*, 127 N. Y. 281; *Manning* v. *Beck*, 129 id. 1.)

The cases cited leave nothing further to be said upon the subject as, according to either, the complaint sets forth a good cause of action, so far as the point under consideration is concerned.

The judgment should be affirmed, with costs, but with leave to the appellants to answer on payment of costs.

All concur, except BRADLEY, J., not voting.

Judgment accordingly.