Charles M. Tompkins et al., Appellants, v. Charles Hunter et al., Respondents.

Insolvency — Sale of Entire Assets to one Creditor — Laws of 1887, Chap. 503. An absolute sale and transfer by an insolvent debtor of all his property, both real and personal, at its full value in payment of debts to but one creditor, without making or contemplating any general assignment for creditors, is not within the provisions of chapter 503, Laws of 1887, prohibiting preferences in such assignments for more than one-third of the value of the assigned estate.

*Berger* v. *Varrelmann*, 127 N. Y. 281, and *Spelman* v. *Freedman*, 130 N. N. Y. 421, limited. *White* v. *Cotzhausen*, 129 U. S. 329, questioned. *Tompkins* v. *Hunter*, 75 Hun, 612, affirmed.

(Argued February 24, 1896; decided April 7, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 18, 1894, which affirmed a judgment in favor of defendants, dismissing the complaint upon the merits, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William F. Cogswell* for appellants. The transfer made by Hunter to the bank, one of his creditors, constituted a general assignment for benefit of all the creditors. ( *White* v. *Cotzhausen*, 129 U. S. 329 ; *Krebs* v. *Ewing*, 22 Fed. Rep. 693 ; *Freund* v. *Gaegerman*, 26 Fed. Rep. 812 ; *Bergen* v. *Varrelmann*, 127 N. Y. 281 ; *Manning* v. *Beck*, 129 N. Y. 1 ; *Maass* v. *Falk*, 146 N. Y. 34 ; *Union Bank* v. *K. C. Bank*, 126 U. S. 223 ; *Abegg* v. *Schwabb*, 7 N. Y. Supp. 46 ; *Spelman* v. *Freedman*, 54 Hun, 409 ; *F. Nat. Bank* v. *Bard.* 13 N. Y. Supp. 688.)

*Edward Harris* for respondent First National Bank of Penn Yan. The defendant Hunter had a right to sell his property to one of his creditors, notwithstanding the fact that he knew himself to be insolvent, and had concluded to discon-

tinue his business. (Laws of 1877, chap. 466; 1 R. S. 603, § 4; *Varnum* v. *Hart*, 119 N. Y. 101; *Manning* v. *Beck*, 129 N. Y. 15; *Karst* v. *Gane*, 136 N. Y. 321; *McNaney* v. *Hall*, 86 Hun, 415; *Weber* v. *Michigan*, 131 Ill. 520; *Farwell* v. *Nilsson*, 133 Ill. 45.)

*John T. Knox* for respondents Hunter. Plaintiffs' contention that the transfer made by the defendant Hunter to the defendant bank is illegal, because the effect of it is to violate that provision of the General Assignment Act which forbids preference beyond one-third in value of the assigned estate, is erroneous, as the deeds and bill of sale were not in contravention of that act, and such statute has no application to this case. (*Dudley* v. *Danforth*, 61 N. Y. 626; *R. W. Co.* v. *Fielding*, 101 N. Y. 504; *Hine* v. *Bowe*, 114 N. Y. 350; *Woodworth* v. *Hodgson*, 35 N. Y. S. R. 964; 129 N. Y. 667; *Manning* v. *Beck*, 129 N. Y. 1; *C. N. Bank* v. *Seligman*, 138 N. Y. 435; *Maass* v. *Falk*, 146 N. Y. 34; *Commercial Bank* v. *Bolton*, 87 Hun, 547.)

MARTIN, J. On and prior to April 19, 1890, Charles Hunter was engaged in business as a grocer and produce dealer in the village of Penn Yan, N. Y. The plaintiffs obtained judgments against him and issued executions thereon, which were returned unsatisfied before the commencement of this action. The judgments were for debts which had accrued before the nineteenth of April, 1890. On that day Hunter had determined to discontinue his business and proposed to the president of the First National Bank of Penn Yan to sell and convey to the bank all his property, real and personal, not exempt from levy and sale on execution, in payment of his liabilities to it, so far as it was sufficient for that purpose. This proposition was accepted, and on the twenty-first day of the same month Hunter conveyed to the bank all his real estate by deed and transferred to it by a bill of sale all his personal property, not exempt from levy and sale upon execution, including all the debts which were due or owing

to him. The bank received this property at the agreed price of $21,790.70, applied that sum upon the debts of Hunter, and surrendered to him his notes therefor, except as to an overdraft for a small amount and the sum of $1,636.33, which was applied in part payment of a note for a larger amount.

The negotiations between Hunter and the bank, which preceded the execution of the deed and bill of sale, had reference to a sale by him to it of the property therein described, and the transfers made by him were intended as an absolute sale and transfer thereof by Hunter to the bank in payment and satisfaction of his indebtedness to it to the extent of the value of the property transferred. The price agreed to be paid was the full value of the property. The bank immediately took and continued in the possession of the property.

The defendant Hunter did not make, and at no time contemplated making any general assignment for the benefit of his creditors. The negotiations which resulted in the execution of the deed and bill of sale, as well as the deed and bill of sale, were made in good faith and only with a view to the sale of his property by Hunter to the bank in payment of his indebtedness. When the negotiations for the purchase and sale of this property took place between the bank and Hunter, the latter had determined to discontinue his business, to give up the dominion of his property to the bank in payment of his liabilities to it so far as it would go, and so stated to its president. Hunter was at the time insolvent, and the president of the bank knew his financial condition.

This action was in the nature of a creditor's bill, and was brought to set aside the conveyances made by the defendant Hunter to the defendant, The First National Bank of Penn Yan. The alleged grounds of action were: 1. That the conveyances and transfers mentioned were made and received with an intent to hinder, delay and defraud the creditors of the defendant Hunter; 2. That they were made as a part of a collusive and fraudulent conspiracy to prevent the collection of the plaintiffs' judgments; and 3. That they were, and each was, intended as a fraud upon or evasion of chapter 466 of

the Laws of 1877, as amended in 1887, and were given and received with an intent to give the bank an unlawful preference.

On the trial the sole ground relied upon by the plaintiffs was, that these conveyances effected a preference which is forbidden by the General Assignment Act and were void, so far at least, as the property transferred exceeded the value of one-third of all the property owned by Hunter at that time. The court, however, held that they did not constitute a preference forbidden by that act but were valid, and directed a judgment dismissing the plaintiffs' complaint with costs.

The appellants strenuously insist that the statute of 1887 was intended, and should be construed to include any and every transfer or conveyance made by an insolvent debtor entirely independent of the question whether he, at the time or subsequently, made or intended to make a general assignment for the benefit of his creditors, and hence, that both the trial court and the General Term erred in holding that the conveyances in question were valid. The appellants argue that the act of 1887 is a remedial statute which should be reasonably construed to accomplish its intended purpose, and that its purpose is to prohibit an insolvent debtor from preferring his creditors to an amount in excess of one-third of his estate, although no general assignment is made or contemplated. The substance of their claim is that this act should be construed as in the nature of a bankrupt law, and so as to apply to the estate of an insolvent debtor, without regard to the character of the transfer made. The statute, so far as material to this question, is as follows : "In all general assignments of the estates of debtors for the benefit of creditors hereafter made any preferences created therein   *   *   *   shall not be valid except to the amount of one-third in value 'of the assigned estate left after deducting, etc.   *   *. *   ." (Laws 1887, ch. 503.)

That this act should receive a reasonable construction, and one which will accomplish its intended purpose, there can be no manner of doubt. Thus, at the threshold of this exami-

nation, it becomes necessary to ascertain its real purpose and effect. In determining that question, it is proper to consider the condition of the law upon the subject when the amendment of 1887 was passed, and thus ascertain the mischief or defect it was designed to remedy. At common law as it existed before there was any statute on the subject in this state, an insolvent debtor possessed the right to make a voluntary assignment for the benefit of his creditors, and to prefer such of them as he deemed best, without any limitation or restriction whatever. The first statute in this state which related to this class of assignments was passed in 1860. (Laws 1860, ch. 348.) It was several times amended, and as amended remained in force until 1877, when a new and somewhat more comprehensive act was passed and that of 1860, as amended, was repealed. (Laws 1877, ch. 466.) Neither of these statutes in any way limited or restricted the right of an insolvent debtor to prefer such of his creditors as he desired. The first and only direct limitation of that right is contained in the amendment of 1887. The statutes of 1860 and 1877 recognized the right of a debtor to make such an assignment, provided the manner in which it should be executed, established a course of procedure for carrying into effect and enforcing the trust thereby created, but did not contain any substantive law. In 1884 the statute of 1877 was amended by adding a new section creating a preference in favor of employees for their wages, and in 1887 the amendment in question was enacted.

Prior to the amendment of 1887, an insolvent debtor had the right to sell and transfer the whole or any portion of his property to one or more of his creditors in payment of, or to secure, his debts, when that was his honest purpose, although the effect of the sale or transfer would be to place his property beyond the reach of other of his creditors and render their debts uncollectible. (*Murphy* v. *Briggs*, 89 N. Y. 446, 452; *Knapp* v. *McGowan*, 96 N. Y. 75, 86; *Remington Paper Co.* v. *O'Dougherty*, 36 Hun, 79; affirmed, 99 N. Y. 673; *Williams* v. *Whedon*, 109 N. Y. 333, 337; *Citizens' Bank*

16

v. *Williams*, 128 N. Y. 77; *McNaney* v. *Hall*, 86 Hun,. 415, 419.) That right existed at common law as an incident to the right of property. It was as complete and perfect as the right to acquire and enjoy it. Indeed, it was upon the principle that a person might acquire, enjoy and dispose of his property that his right to make a general assignment rested.

While the law was in this condition, the legislature amended the General Assignment Act, which, as its title indicates, was a. statute that related solely to voluntary assignments and to no other transactions or conveyances. It had then become usual for debtors making general assignments to prefer creditors to an extent that was deemed inequitable and unjust, and it was to prevent that mischief that the amendment of 1887 was. passed. That act did not in terms include any conveyance or transfer other than a general assignment. When it was. passed, the character of such an assignment was well understood. There is a broad and well defined distinction between such an assignment and a deed or bill of sale. The former is a transfer by a debtor of his property to another in trust to sell, convert it into money, and distribute the proceeds among his creditors. It implies a trust, and contemplates the intervention of a trustee. The others import an absolute sale and transfer of the title, to be held and enjoyed by the purchaser without any attending trust. As the nature of such an assignment was then as well understood as that of any other particular form of conveyance or transfer, it is manifest that. it was the purpose of the statute to limit the right of an insolvent debtor to dispose of his property only to cases where he made a general assignment for the benefit of his creditors,. and it is not reasonable to suppose that the legislature intended to include in that act any other conveyance or transfer. If it had, such conveyances or transfers would have been mentioned in the statute, or it would have contained some such general provision to that effect as exists in relation to insolvent corporations. (Laws 1892, ch. 688, § 48.)

In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words.

employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning. (*Newell* v. *People*, 7 N. Y. 9, 97; *McCluskey* v. *Cromwell*, 11 N. Y. 593, 601; *People ex rel. Brown* v. *Woodruff*, 32 N. Y. 355, 364; *Matter of Miller*, 110 N. Y. 216, 222.) In the case of *People ex rel.* v. *Woodruff*, it was said: " It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain intent and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen." Again, in the *Matter of Miller*, where it was contended that the reason and equity of a statute brought within its operation certain parties not mentioned in it, it was said: " If that be so, it constitutes no reason for controlling its language, although it might seem that the legislature would have provided for such a case had their attention been directed to it." It is not the duty of courts to disregard the plain words of a statute, even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act. (*Karst* v. *Gane*, 136 N. Y. 316, 321.) As this statute changed the common law as it existed when it was passed, it will be held to abrogate it only so far as the clear import of the language absolutely requires. (*Fitzgerald* v. *Quann*, 109 N. Y. 441.) Applying these rules to the construction of the statute under consideration, it follows that its plain words cannot be disregarded or its effect extended beyond the clear import of the language employed.

This statute has none of the attributes of a general bankrupt law, under which a debtor may be compelled to assign his property for the benefit of his creditors. No such law exists in this state as to an individual debtor. If he makes an assignment, he may prefer his creditors only to the extent of one-third of his estate. If he makes none, then it is obvious that the statute of 1887 has no application, and he may dispose of his property as he sees fit to secure or pay his hon-

est debts. If he cannot be compelled to assign, and does not do so voluntarily, we find no law which prohibits him from selling and conveying his property for that purpose. The language of this act indicates a purpose to prohibit a debtor from preferring his creditors beyond the limit mentioned if he attempts to create such preference in a particular and specified manner, but indicates no purpose to otherwise deprive him of his property or limit his. control over it. In other words, the law applies to the method of transfer, and not to the property of the debtor either while it remains in his hands or when it has been conveyed otherwise than by a voluntary assignment. If the contention of the appellants was sustained, its practical result would be to prevent an insolvent debtor from paying his debts except to the extent of one-third of the value of his property, and to impound the remainder in his hands until some vigilant creditor should reach it by legal process, which would, to some extent, constitute a suspension of his right of property in two-thirds of his estate. It is clear that such was not the object or purpose of the statute.

The amendment of 1887 has been several times considered by this court. In *Berger* v. *Varrelmann* (127 N. Y. 281), where a debtor confessed judgment in favor of a creditor in contemplation of making an assignment for the benefit of his creditors, the confession of judgment having been a mere instrumentality employed to give preference to a particular creditor in excess of the limitation of the statute and the creditor having had knowledge of the fact, and the purposes of the confession, the Second Division held that it was void under the statute of 1887. The same doctrine was held in *Spelman* v. *Freedman* (130 N. Y. 421). This court subsequently recognized the correctness of those decisions upon the ground that in each case the confession of judgment was a part of a plan or scheme which included the making of a general assignment and was to be construed as a part of it, and, hence, was within the prohibition of the assignment act. (*Manning* v. *Beck*, 129 N. Y. 1; *C. N. Bank* v. *Seligman*, 138 N. Y. 435; *Abegg* v. *Bishop*, 142 N. Y. 286.) In the *Manning*

case this court held that a creditor who had procured a bill of
sale from an insolvent debtor in payment of and as security
for an honest and subsisting debt, in ignorance of any inten-
tion upon the part of the debtor to thereafter make an assign-
ment, could hold the property transferred although it exceeded
one-third of the assets of the vendor.    In discussing the ques-
tion in that case, PECKHAM, J., said :   " But the statute does
not and was not intended to prevent a creditor from obtain-
ing payment of or a security, and thereby a preference for his
debt, even from an insolvent debtor."    In further discussing
the question he adds :  " The debtor might also neglect to make
an assignment and then it would look as if the acts of prefer-
ence would be legal.    The statute of 1887, at any rate,
does not cover such a state of facts, and we do not feel at
liberty to enlarge its provisions by construction so as to
bring such facts within the condemnation of the statute.
If it be thought good policy so to do, the legislature, and not
this court, is the body to which application should be made
to effect such change in the law."    In *C. N. Bank* v. *Selig-
man* (138 N. Y. 435, 445), the debtors made an assignment,
giving certain creditors preference in excess of one-third of
their estate, and allowed other creditors to obtain judgments
upon offers and acceptances.    In discussing the effect of the
judgments, ANDREWS, Ch. J., said : " The judgments and execu-
tions constituted and could constitute no preference under the
act of 1887.    If no assignment had been made the judgments
could not have been assailed by the other creditors."    We are
unwilling to extend the doctrine of the *Berger* and *Spelman*
cases so as to include a case like this.    To do so, would be to
apply the statute to a case not included within its language or
apparent purpose.    Such a construction would greatly extend
the effect of the statute, would doubtless include many cases
where its application would be inequitable and unjust, and
would tend to disarrange and unsettle many transactions
which are authorized under the law as it is now supposed to
exist.    It is manifest that neither the letter nor the spirit of
the act of 1887 renders it applicable to a case like this.    It is

the province of this court to construe statutes, but not to enact them. If, for any reason, public policy requires a law prohibiting insolvent debtors from securing or paying their creditors, or that shall limit the amount or proportion of their property which shall be devoted to that purpose, the Legislature and not this court must be relied upon for its enactment. As there is no claim here that the transfers by Hunter to the bank were made with an intent to hinder, delay or defraud the creditors of the former and void under the statute relating to that subject (2 Rev. St. 137, §§ 1–8), or that they were void for any reason other than because in contravention of the statute of 1887, it follows, both upon principle and authority, that the judgment in this case should be upheld.

The learned counsel for the appellants earnestly urges that the case of *White* v. *Cotzhausen* (129 U. S. 329) should be regarded as high if not a controlling authority upon this question. We do not deem it necessary to discuss that case, further than to say that it was considered by this court in the *Manning* case, that the statute involved in that case was held to be unlike ours, and that the White case was not then followed by this court. It may, however, be observed that the statute of Illinois relating to assignments for the benefit of creditors was under consideration in the *White* case, that the decision in that case was based upon a decision of the highest court of that state, and was asserted to be in accordance with it. An examination of the later cases in the state of Illinois discloses that its courts do not construe the statute as it was construed in the *White* case, but expressly decline to be controlled by that decision. (*Weber* v. *Mick*, 131 Ill. 520; *Farwell* v. *Nilsson*, 133 Ill. 45.) Upon the question of the construction and effect of a statute of a state regulating assignments for the benefit of creditors, the decisions of its highest court are regarded as of controlling authority in the courts of the United States. (*Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223.) As it is manifest from the decisions of the highest court of the state of Illinois that the decision in the *White* case was based upon a misapprehension of the

former decisions in that state as to the effect of the statute, the *White* case has little weight as an authority upon the ·question involved in this case.

. We are of the opinion that the statute of. 1887 has no application to the facts in this case, and that the judgment of the General Term should be affirmed, with costs.

All concur, except Haight, J., not sitting.

Judgment affirmed.