SAMUEL P. COLT, Assignee, *vs.* SEARS COMMERCIAL CO. *et al.*

PROVIDENCE—DECEMBER 20, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Preferences by an assignor are good in the absence of a statute declaring them otherwise, and they can be avoided only as provided in such statute.

The statute has given to the assignee, and to him alone, the power to avoid a preference made by his assignor.

Such assignee may elect whether he will exercise this power or not; but if he should refuse to discharge his plain duty in this respect he could be compelled to perform it or be removed from his trust.

An assignee is, in a general sense, a trustee for the creditors, and bound to exercise the utmost diligence and good faith in the discharge of his duties.

The previous decision in this case, 20 R. I. Part 1, 65, affirmed.

PETITION FOR A REARGUMENT of the case reported in 20 R. I. Part 1, 65.

TILLINGHAST, J. The complainant's counsel insists that, under the decision of this court in *Hamilton* v. *Colt*, 14 R. I. 209, the transaction whereby the Sears Commercial Company obtained security for its claim against the National Rubber Company was *absolutely void.* He assumes, and claims that he has the right to assume, that this court in that case deliberately repudiated the doctrine of *Snow* v. *Long*, 2 Allen, 18, and of like cases, as applicable to our statute, and knowingly and intentionally gave to the word "void," in our act, its full primary meaning and force. Such an assumption is quite unwarranted. In *Hamilton* v. *Colt* it was held that under proper pleadings it was competent for the defendant to *show* that the plaintiff's mortgage was void. And upon such showing the court said that "it instantly *became* void *ab initio* under the statute." The court nowhere said that such a mortgage was absolutely void, but only "*generally*" void; and, as the context shows, this word was used solely for the purpose of including the assignee, in that case, among the persons who might show as a defence that the mortgage was void. Moreover, the question as to the right of an assignee to elect to treat as valid a conveyance which might be open to attack as a preference was not raised or even suggested in that case. The main point involved was whether

the defence set up—that of a preference under the statute—was open to the defendant assignee, or whether such defence was limited to creditors and *bona fide* purchasers for value; and the court said that such a defence was open to the assignee. But that Chief Justice Durfee, in using the language he did concerning the mortgage in that case, intended to lay down the rule, that a preference is absolutely void, under our statute, or that the court understood that it was so deciding, is quite contrary to our understanding of the scope and purport of the case. Had the learned writer of that opinion intended to array himself and the court in opposition to the whole current of judicial opinion, both English and American, as to the meaning of the word "void" in statutes like the one before us, he certainly would not have contented himself with simply making a bald statement as to the meaning thereof, without discussion or reference. Such dogmatism in judicial statement was not one of his characteristics.

For a full discussion of the meaning of the word "void," in similar statutes, see *Pearsoll* v. *Chapin*, 44 Pa. St. 11-17; *Beecher* v. *Mill Co.*, 45 Mich. 103; *Bowen* v. *Johnson*, 17 R. I. 779; *Hudson* v. *White*, 17 ·R. I. 519 (528); *Butler* v. *Moore*, 73 Me. 151 (155); *Harvey* v. *Varney*, 98 Mass. 118 (120).

But it is urged that, even if the preference was not absolutely void, yet the assignee could not abandon the right to avoid a preference—that is to say, that he had no power of election. In support of this contention complainant's counsel argues that an assignee for the benefit of creditors is, as the name implies, a trustee for the creditors, bound to preserve their rights and guard their interests, and as such trustee he has no more power to surrender or abandon the rights of his *cestuis que trustent* than any other trustee. As to the correctness of the general proposition contained in this argument of course there can be no question. An assignee is in a general sense a trustee for the creditors, and is bound to exercise the utmost diligence and good faith in the discharge of the duties devolved upon him, and is at all times amenable

to the court for any misconduct in connection therewith. But at the same time he has certain powers conferred upon him by our statute, which powers he alone can exercise; among which is the power to avoid a *preference*, which power rests wholly upon the statute.     *Freeland* v. *Freeland*, 102 Mass. 475.  The statute gives to the assignee powers superior to those either of the assignor himself .or of his creditors, for, independently of the statute, *preferences* are good against either.  That is to say, as argued by counsel for respondent : "Neither the property conveyed in preference nor the right of action to avoid a preference is vested by our statute in the creditors, but both are vested in the assignee.  The assignee is given a new right of action—he does not succeed to a right of action—which, but for the assignment, would exist in the creditor."

If the assignee should refuse to discharge his plain duty in regard to setting aside a preference, he could either be compelled to do so or else removed from his trust and another person appointed in his place ; so that creditors are fully protected in their rights.  In other words, as well said by complainant's counsel, "The assignee cannot act as he pleases, but is subject to the control of the court at the petition or suit of the creditors."

The New York cases cited by complainant's counsel in support of his petition, viz., *Dewey* v. *Moyer*, 72 N. Y. 70, and *Spelman* v. *Freedman*, 130 N. Y. 421, are not controlling for several reasons.  In the first place it is apparent from an examination of the statutes of New York relating to assignments for the benefit of creditors (see chapter 314, Laws of 1858, and Rev. Stat. Codes and Gen. Laws of New York by Birdseye, 2 ed. vol. 1, p. 148), and the decision thereon (see *Manning* v. *Beck*, 129 N. Y. 1; *Tompkins* v. *Hunter*, 149 N. Y. 117), that the statute against preferences in that State is widely different from ours; that it provides only for voluntary assignments and, as said by the court in the last named case, "has none of the attributes of a general bankrupt law, under which a debtor may be compelled to assign his property for the benefit of his creditors," whereas the whole power of

the assignee to avoid preferences under our statute arises from the fact that the proceedings which result in his appointment, even although the assignment is the act of the assignor himself, are proceedings *against* the assignor, and, hence, involuntary proceedings.   *Bank* v. *Heintzeman*, 15 R. I. 431.

In the second place, while the case of *Dewey* v. *Moyer* seems to recognize the right of creditors to commence an action to recover property fraudulently transferred by an insolvent debtor, where the assignee neglects or refuses so to do, yet this was evidently only a *dictum* upon this point, as it is distinctly stated in the opinion that neither the appointment of an assignee nor the existence of any rights in such assignee, nor any defence having reference to such rights, is set up in the answer.   And the Supreme Court of the United States, in reviewing the same case on a writ of error, said that "if it had been made to appear, by the record properly before the Court of Appeals, that an assignee had been appointed, and he had properly qualified and accepted such appointment, we do not see how the plaintiffs could have recovered judgment for the value of the property." . . . . . "The Court of Appeals rests its decision on the ground that the pleading does not set out or rely on the assignment or on the rights vested by it in the assignee, and it says very justly that if any such issue had been made the plaintiffs might have had a sufficient reply, which they were not called upon to produce as the pleadings stand."

The case of *Spelman* v. *Freedman, supra*, is a case where the assignee refused after due notice to bring an action to set aside *fraudulent* preferences, obtained by confession of judgment made by the insolvent a few hours before the making of the assignment, and the court held that as beneficiaries under the trust the plaintiffs had the right to have it enforced through the assignee, by taking such action as he should have taken, not for their exclusive advantage, but for the benefit of all similarly situated, and that plaintiffs had the right to commence an action to reach the property *fraudulently* transferred, making the *assignee*, the debtor and his transferees,

parties defendant. But what relevancy has this case in any event? The complainant in the case at bar has not only not refused to bring an action to set aside the preference in question, but, on the contrary, is seeking by this bill to accomplish that object, and we are dealing with this bill and not with one brought by creditors of the insolvent corporation. But the case above relied on, even admitting it to be pertinent, does not commend itself to our judgment in preference · to the decisions of the United States Supreme Court, and those of Massachusetts and other States, which are to the contrary.

Thus in *Glenny* v. *Langdon*, 98 U. S. 20, it was held that it is only through the instrumentality of his assignees that creditors can recover and subject to the payment of their claims the property which the bankrupt fraudulently transferred prior to the adjudication in bankruptcy, or which he conceals from and fails to surrender to his assignees.

To the same effect are *Trimble* v. *Woodhead*, 102 U. S. 647 ; *Olney* v. *Tanner*, 21 Blatchf. 540 ; and Burrill on Assignments, § 56 and cases cited ; and the provisions of the United States bankrupt law as to the right of an assignee to avoid preferences and fraudulent conveyances are similar to those of our statutes applicable to this case.

Again, our statute, having clothed the assignee with all the necessary powers to enable him to recover all property of the insolvent debtor conveyed in fraud of the rights of creditors or in violation of the provisions of this act, thus furnishing a purely statutory remedy, must, under well settled rules of law, be held to be the only remedy available. See *Smith* v. *Tripp*, 14 R. I. 112. In the absence of the statute, as already said, preferences would be perfectly good. Under the statute they may be avoided, but only as therein provided. The statute has created a new right and furnished a remedy for its enforcement, and that remedy only can be pursued.

As to the complainant's contention that an assignee, being a trustee for creditors, has no power to elect whether he will attempt to enforce a possible right, without regard to his own judgment as to its validity, it is sufficient to say that

such a view, if adopted, would evidently be productive of much inconvenience and useless expense, and in many instances would unnecessarily delay the settlement of the estate; and the law has wisely devolved upon him the duty of determining whether the estate shall be involved in litigation of that sort, always assuming, of course, that he acts in the utmost good faith in making his election.

In *Freeland* v. *Freeland, supra,* Gray, J., said: "The assignment in insolvency transfers to the assignee the right to avoid a conveyance made in fraud of creditors; and the right of electing whether to affirm or avoid such a conveyance may be exercised by the assignee, and by him only." And this doctrine is fully sustained by the Supreme Court of the United States in the cases hereinbefore cited, and also in *Dushane* v. *Beall,* 161 U. S. 513, and *Sparhawk* v. *Yerkes,* 142 U. S. 1. In the former case, Fuller, C. J., says: "If with knowledge of the facts, *or being so situated as to be chargeable with such knowledge,* an assignee, by definite declaration or distinct action or forbearance to act, indicates, in view of the particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in *Smith* v. *Gordon,* he 'stands by without asserting his claim for a length of time and allows third persons, in the prosecutions of their legal rights to acquire an interest in the property,' then he may be held to have waived the assertion of his claim thereto."

The same rule has prevailed under the English Bankruptcy Acts. In *Newnham* v. *Stevenson,* 10 C. B. 712, Jarvis, C. J., says: "The effect of bankruptcy upon a fraudulent preference is not to put the goods in the same situation as if they were actually the goods of the bankrupt, so as to vest them at once by the bankruptcy in the assignees independently of any election on their part, other than their acceptance of the office of assignees. By a transfer which is a fraudulent preference the property vests in the transferee, subject to be divested by the assignees at their *election;* and the title of the transferee is perfect except so far as it is avoided by the assignee."

The case of *Preston* v. *Spaulding*, 120 Ill. 208, cited by counsel for complainant, is a very different case from the one before us, and is based on a very different statute from ours. That was a rank case of fraudulent preference, whereby substantially the whole of the assignor's estate was kept from the possession and control of the assignee, who refused to take any steps to recover the same. And the court held that, it being his imperative duty to sue for and recover "everything belonging or appertaining" to the estate of the assignors, upon his refusal to do so the creditors had the right to come into a court of equity and assert their rights and protect their interests; the "*jurisdiction of courts of equity to decree rescissions of contracts for fraud, and to administer those remedies which are dependent upon such rescission*, being well established." We do not think that a decision resting upon such a state of facts as are set forth in that case, and brought under a statute so different from ours (see *Farwell* v. *Nilsson*, 133 Ill. 45), should cause us to depart from the well settled doctrine hereinbefore announced as to the powers of an assignee in insolvency. . It is to be observed in the case at bar that no creditors are before us complaining of the conduct of the assignee, and no one is questioning either his entire good faith or his good judgment in the management and disposition of the assigned estate. He is before us, seeking by this bill to avoid a preference which, while not alleged to have been fraudulently made by the assignor, yet was within the inhibition of the statute; and in our previous opinion we have given the reasons why this cannot now be done. Upon a reëxamination of the questions submitted, and a careful consideration of the elaborate briefs of counsel, we see no reason to modify our former decision, and the petition for reargument must, therefore, be denied.

*James Tillinghast, William R. Tillinghast, Theodore F. Tillinghast and Samuel Norris, Jr.*, for complainant.

*Stephen O. Edwards, Walter F. Angell and Seeber Edwards*, for respondents.