(39 App. Div. 206.)

## WILE v. CAUFFMAN et al.

(Supreme Court, Appellate Division, Fourth Department.   March 22, 1899.)

1. ASSIGNMENTS FOR CREDITORS—PREFERENCES—ACTION BY ASSIGNEE.

Under Laws 1897, c. 417, § 7, authorizing an assignee for creditors to set aside transfers of personalty in fraud of creditors, an assignee may bring an equitable action to reach assets knowingly transferred and received in violation of Laws 1887, c. 503, forbidding preferences in excess of one-third of the assets of the assigned estate.

2. SAME—JOINDER OF PARTIES DEFENDANT.

Where transfers are made to various creditors in violation of Laws 1887, c. 503, forbidding preferences in excess of one-third of the assets of an estate assigned for creditors, the assignee may join all the transferees as defendants in a single equitable action to reach the unlawful excess.

3. SAME—NOTICE—PARTNERSHIP—GUARDIANS.

Where all the members of an insolvent firm, in contemplation of a general assignment, which they afterwards make, transfer assets of the firm to one of their number, as guardian, in violation of Laws 1887, c. 503, forbidding preferences in excess of one-third of the assets of the assigned estate, the transferee is charged with knowledge of the intent of the partners, and of the fact that the property transferred exceeds the lawful amount.

Appeal from special term.

Action by Sol Wile, as assignee of Joseph Cauffman and another for the benefit of creditors, against Joseph Cauffman, as guardian of David Cauffman and others, impleaded with others. From an interlocutory judgment entered on a decision overruling a demurrer of defendant Cauffman to the complaint, said defendant appeals. Affirmed.

It is alleged in the complaint that Joseph Cauffman and Meyer Dinkelspiel, for several years prior to May 3, 1898, were partners under the firm name of Cauffman & Dinkelspiel, engaged in the wholesale clothing business at Rochester, N. Y., which firm became insolvent, and at the date last mentioned made a general assignment to the plaintiff for the benefit of creditors, which assignment was duly recorded in the office of the clerk of the county of Monroe on the date of its execution, and the assignee immediately entered upon the execution thereof. The assignment contained no preferences, except for wages owing to employés of the assignors, but in fact the assignors were not indebted to their employés at the time of the assignment. The assignors at the time of their assignment were indebted to various creditors in amounts aggregating $52,600. The assigned estate has been converted into money, and the total amount realized, after deducting the costs and expenses of executing the assignment, does not exceed $18,000, which, under the terms of the assignment, is distributable pro rata upon the total amount of the debts, and will pay less than 35 per cent. of the indebtedness. It is further alleged that in April, 1897, immediately prior to the execution of the assignment, in contemplation thereof, and for the purpose of evading section 30 of the general assignment law, added thereto by chapter 503 of the Laws of 1887, the assignors paid moneys and assigned choses in action to 12 different firms and persons, amounting to upward of $39,000, which were intended as preferences, and made in violation of the section, which prohibits preferences in excess of one-third of the assets of the assigned estate. It is also alleged that the various transferees knew that the assignors were then insolvent and about to make a general assignment, and that such payments and transfers were made by the assignors, and received by the various transferees, with knowledge of the insolvency of the assignors, and in contemplation of the impending general assignment. It is specifically alleged that the assignors transferred to Joseph Cauffman, the demurrant, as guardian of Clementine Cauffman, accounts amounting to $1,093.25, and to him as guardian of Harry Cauffman and

David Cauffman accounts amounting to $2,440.25, and moneys to the amount of $400; and like specific allegations are made in respect to the other 11 transferees. The judgment asked for is that the various transferees account for the choses in action and money received by them, and that they be compelled to pay over to the plaintiff the moneys so unlawfully and fraudulently received by each, to the end that only one-third of the assignors' assets be applied in payment of the various persons so unlawfully attempted to be preferred.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Eugene M. Strouss, for appellant.
James Breck Perkins, for respondent.

FOLLETT, J. The appellant demurred on two grounds: "(1) That causes of action have been improperly united; (2) that the complaint does not state facts sufficient to constitute a cause of action."

The second ground of demurrer will be first considered. The power of an assignee for the benefit of creditors to set aside fraudulent transfers of personalty made by his insolvent assignor in fraud of the rights of creditors is conferred by section 7 of chapter 417 of the Laws of 1897 (the personal property law); and the same power is conferred in respect to conveyances of realty so made by section 232 of chapter 547 of the Laws of 1896 (the real property law). 5 Rev. St. (Banks' 9th Ed.) p. 3590. These provisions were substantially taken from chapter 314 of the Laws of 1858, and the acts amendatory thereof (3 Rev. St. [Banks' 9th Ed.] p. 2166), all of which were repealed by chapter 417 of the Laws of 1897. The learned counsel for the demurrant asserts that under these statutes an assignee for the benefit of creditors cannot maintain an action to set aside transfers of property by insolvent debtors, simply because made in violation of a statute, unless such transfers were made with a fraudulent intent. In support of that position, Crisfield v. Bogardus, 18 Abb. N. C. 334, and other cases of which that is a type, are cited. The case cited simply held that an assignee for the benefit of creditors could not set aside a chattel mortgage given by the assignor simply because the mortgagee had failed to file the mortgage before the execution of the assignment. The chattel mortgage was found to have been given by the mortgagor and received by the mortgagee in good faith, and it was held that the failure to file the mortgage did not render it void as against the assignee. These cases are not germane to the question involved in this case, for it is alleged in the complaint that the assignors and their transferees knowingly violated a statute forbidding such transfers. The demurrant was a member of the insolvent firm, and must be presumed to have known its condition, and the intention of the partners to make all these preferences and the general assignment, and he is deemed to have known that the statute forbade such preferences; and, having joined in the transfer creating the preference from the firm to himself as guardian, and in the subsequent general assignment, this particular transfer is affected by the knowledge of the intent of the partners, and with knowledge that the preferences made exceeded the amount permitted by the statute. An equitable action in aid of an assignment may be maintained to reach assets transferred in violation of

57 N.Y.S.—16

section 30 of the general assignment law. Spelman v. Freedman, 130 N. Y. 421, 29 N. E. 765; Bank v. Seligman, 138 N. Y. 435, 34 N. E. 196; Abegg v. Bishop, 142 N. Y. 286, 36 N. E. 1058; Maass v. Falk, 146 N. Y. 34, 40 N. E. 504.

Are causes of action improperly united? The situation disclosed by the complaint is that there are assets in the hands of this plaintiff which he holds for the purpose of administration, pursuant to the general assignment and the act regulating such instruments. More than one-third of the assets of the assignors were, in contemplation of the assignment, distributed among various creditors for the purpose of defeating the statute which forbids preferences, "except to the amount of one-third in value of the assigned estate left after deducting such wages or salaries, and the costs and expenses of executing such trust." It is alleged that the several transferees knew of the unlawful purpose of the assignors. By this action the plaintiff seeks to marshal the assets which should have passed to him by virtue of the assignment for distribution pursuant to its terms. The rules regulating actions for the settlement of decedents' estates, insolvents' estates, bankrupts' estates, and the estates of insolvent corporations, among creditors, are quite different from those which govern actions brought by creditors against living persons, solvent persons, and solvent corporations,—going concerns. In such actions creditors seeking relief against a debtor must bring several actions in their own names and in their own interests; but, when relief is sought against the estate of a decedent or insolvent which is in the hands of the court for settlement and distribution, different rules prevail. In such cases a court of equity will reach out its hands, bring in all the parties, gather together the assets, marshal them, and determine the interests of all the various creditors in those assets. A creditor having a debt secured by a specific lien may sue his debtor at law, or enforce his lien; but, if the creditor be dead, courts of equity, in suits to marshal and distribute the assets, in which all the creditors are parties, may compel a creditor having a lien first to exhaust it, and compel unsecured creditors first to exhaust the personalty, before the realty shall be sold. In such actions parties are brought in as defendants, and their interests determined, who could not be joined in actions which do not relate to estates in the hands of the court for distribution. The reason for these rules is that a court of law is without power to mold its relief and final judgment so as to do exact justice among all the parties interested in such estate, which is within the peculiar power of courts of equity to do. In the case at bar these defendants may, under the statute, be entitled to retain some part of the amounts transferred to them; and the amount which each defendant is entitled to retain must depend upon the amount of the debts of the assignors, the amount of the net assets, and the relation which their preferences bear to one-third of the net assets. If an action at law could be maintained against each of these defendants to recover the amount which he had received by way of preferences, those creditors against whom the first judgments were recovered and enforced, restoring to the estate the excess of the preferences, would be with-

out remedy against the others, against whom judgments had not been recovered and enforced. The necessities of the case seem to require, for the protection of the plaintiff and of the defendants, that all should be parties to one action. In Maass v. Falk, supra, the court assumes that when an assignee seeks to recover unlawful preferences, secured outside of, and in contemplation of, a general assignment, the relief must be sought in a court of equity, and not at law. But whether an equitable action should be brought against each transferee, or whether all may be joined in a single action, was not discussed. In Spelman v. Freedman, supra, a debtor, in contemplation of making a general assignment, confessed three judgments to different creditors, upon which executions were issued, and levies made upon the debtor's property; and on the same day he made a general assignment for the benefit of creditors. In an action brought by the general creditors of the assignor against the three judgment creditors to set aside the judgments and recover the property received under them for the benefit of the assigned estate, the assignee having refused to bring the action, it was held on demurrer that such an action might be maintained, though it does not appear that the demurrer was interposed on the ground that there was an improper joinder of causes of action. The decisions that forbidden preferences made by an assignor in contemplation of making a general assignment do not invalidate the assignment, and that collateral unlawful preferences, made and received with knowledge on the part of the transferees of the debtor's intention to make a general assignment, do not wholly invalidate the transfers, which are simply to be scaled down so that the preferences shall not exceed one-third of the assignor's net assets, have surrounded the settlement of insolvent estates with difficulties which only a court of equity is competent to solve.

Briefly stated, the case is this: The demurrant and his co-defendants are, with others, creditors of the estate, and entitled to its assets. The demurrant concedes on this record that he and his co-defendants have received assets of the assignors in excess of the amount that they are entitled to under the statute. This action is simply to marshal the assets of the estate, and distribute them among the creditors according to law. Marshaling of assets among contending creditors is a well-recognized head of equity jurisprudence. O'Brien v. Fitzgerald, 79 Hun, 616, 29 N. Y. Supp. 975; Id., 143 N. Y. 377, 38 N. E. 371; Id., 6 App. Div. 509, 39 N. Y. Supp. 707; and Id., 150 N. Y. 572, 46 N. E. 1126,—relied upon by the demurrant, does not seem to me to be in point. That was an action brought by the receiver of an insolvent bank to recover damages of the directors for their negligent conduct of its business. It was not alleged in that action that the defendants had ever received, or had in their hands, assets belonging to the corporation, which they were not entitled to retain.

The interlocutory judgment should be affirmed, with costs, with leave to the demurrant to withdraw his demurrer, and answer, upon the payment of costs, including the costs of this appeal. All concur.