THE CITIZENS' BANK of Perry, N. Y., Respondent, *v.* HELEN A. WILLIAMS, Appellant.

It is not a fraud as matter of law for the members of a firm to appropriate the firm property to the payment of a debt, for which they are all liable, although not a firm indebtedness, and one of the copartners who is jointly liable with the others, may appropriate his individual property for the payment of the joint debt.

Where, therefore, an attachment was obtained on the ground that the members of a firm had made an assignment with intent to defraud their creditors, and the only claim of fraud set forth in the moving papers was that the copartners gave their joint and several promissory notes for the individual debt of one of them, the other signing as surety, and that thereafter as a firm, and as individuals they executed the assignment, in which they directed that the notes should be paid out of the proceeds of the firm property, *held*, that the denial of a motion to vacate the attachment upon the papers on which it was granted was error.

*Wilson* v. *Robertson* (21 N. Y 587), distinguished.

As to whether if the firm assets were in the hands of a court of equity to be administered according to equitable principles, the court would direct the firm debts to be first paid, *quære*.

(Argued June 5, 1891; decided June 16, 1891.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of January, 1891, which affirmed an order of Special Term refusing to vacate an attachment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*B. Frank Drake* and *Owen Harris* for appellant.  The orders
are appealable, as the motions were made on the ground that
the affidavits on which the attachments were granted contain
no evidence that the defendants had fraudulently disposed of
property.  (*Morris* v. *Talcott*, 96 N. Y. 100; *S. C. Bank* v.
*Alberger*, 78 id. 252; *Allen* v. *Meyer*, 73 id. 1.)  It is not
fraudulent for insolvent partners to voluntarily dedicate to
the payment of a debt the property which the creditor, by
legal process, could have sold to satisfy that debt.  The prefer-
ence of such a debt is not evidence of that "intent" to defraud
partnership creditors which entitles them to an attachment.
(*Hubbard* v. *Gurney*, 64 N. Y. 457; *Palmer* v. *Purdy*, 83
id. 144; *Hoyt* v. *Mead*, 13 Hun, 327; Code Civ. Pro. § 454;
*Marsh* v. *Dunckel*, 25 Hun, 167; *Carman* v. *Plus*, 23 N. Y.
286; *Decker* v. *Gallord*, 8 Hun, 110; *Wells* v. *Mann*, 45 N.
Y. 327; *Newcomb* v. *Hale*, 90 id. 326; *Saunders* v. *Riley*,
105 id. 12; *Kelly* v. *Scott*, 49 id. 595; *Chapin* v. *Thompson*,
89 N. Y. 271; *Terry* v. *Butler*, 43 Barb. 395; *Crook* v.
*Rindskopf*, 105 N. Y. 476; *Dimon* v. *Hazard*, 32 id. 65;
*Stanton* v. *Westover*, 101 id. 265; Bates on Part. § 191; *Bank
of Buffalo* v. *Thompson*, 121 N. Y. 280; Lindley on Part.
192; *In re Gray*, 111 N. Y. 405; *Brinkerhoff* v. *Marvin*, 5
Johns. Ch. 320; *Turner* v. *Jaycox*, 40 N. Y. 470.)  A war-
rant of attachment cannot be granted for the sole reason that
the defendants have applied partnership assets to pay debts
which both partners owe, without proof of an intent to
defraud.  (Code Civ. Pro. § 636; *Millikin* v. *Dart*, 26 Hun,
24; *Belmont* v. *Lane*, 22 How. Pr. 365; *Place* v. *Miller*, 6
Abb. [N. S.] 178; *S. R. A. E. Co.* v. *Harwood*, 30 Hun, 9;
*Neal* v. *Clark*, 95 U. S. 704; 111 id. 676; *Palmer* v. *Hussey*,
87 N. Y. 303; *Stratford* v. *Jones*, 97 id. 568; *Lawrence* v.
*Harrington*, 122 id. 408–412; 3 Kent's Comm. 65; *Bogert* v.
*Haight*, 9 Paige Ch. 297; *Morrison* v. *Atwell*, 9 Bosw. 503;
*Scott* v. *Guthrie*, 10 id. 409; *Powers* v. *Graydon*, Id. 530;
*Fox* v. *Heath*, 16 Abb. Pr. 163; *Richardson* v. *Harron*, 39
Hun, 537, 540; *Crook* v. *Rindskopf*, 105 N. Y. 476–488;
*Haynes* v. *Brooks*, 116 id. 487.)  The affidavits do not state

a case for the consideration of the questions on which the opinion of the General Term is based. (*Bonnell* v. *Griswold*, 68 N. Y. 294; *United States* v. *Ames*, 99 U. S. 35; *B. C. Inst.* v. *Bitter*, 87 N. Y. 250, 256; *Bernheimer* v. *Rindskopf*, 116 N. Y. 428.)

*Eugene M. Bartlett, George F. Danforth* and *Morris A. Lovejoy* for respondent. The affidavits are sufficient to authorize the issuing of the attachments. (*Bernheimer* v. *Rindskopf*, 116 N. Y. 428.) If there is any evidence of a fraudulent disposition of their property by the defendants, this court has no jurisdiction to review the decision of the General Term thereon. (*Allen* v. *Meyer*, 73 N. Y. 1; *White* v. *Reichert*, 14 Wkly. Dig. 285; *Frankel* v. *Hays*, 20 id. 417; *Hamburger* v. *Moeller*, 4 N. Y. S. R. 447; *Jaffray* v. *Nast*, 32 id. 250.) The Clark notes preferred in the assignment and payable out of the copartnership property are the individual debts of Helen A. Williams. (*Tallman* v. *Colgrove*, 67 N. Y. 96; *Millard* v. *Thorn*, 56 id. 406; *Londalfo* v. *Appleton*, 40 id. 542.) As the debt to Clark was the individual debt of one partner only — in no sense a firm debt or obligation — it follows that, by reason of the appropriation by the firm of partnership property to its payment, the assignment which directs that appropriation must be deemed fraudulent and void. (*Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 62 id. 162; *Hulbert* v. *Dean*, 2 Keyes, 97; 2 Abb. Ct. App. Dec. 428; *Turner* v. *Jaycox*, 40 N. Y. 470; *Forsyth* v. *Woods*, 11 Wall. 484; *Kelly* v. *Scott*, 49 N. Y. 17; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 46; *Case* v. *Beauregard*, 99 U. S. 119; *Bulger* v. *Ross*, 119 N. Y. 495; *Nordlinger* v. *Anderson*, 34 N. Y. S. R. 361; *Coster* v. *Clark*, 3 Edw. Ch. 411.) An attachment may issue against the property of a firm who have made an assignment preferring the individual debt of one of the partners. (Code Civ. Pro. § 336; *Hirsch* v. *Hutchinson*, 3 Civ. Pro. Rep. 106; *Victer* v. *Henlein*, 34 Hun, 562; *Bulger* v. *Ross*, 119 N. Y. 465; *Collumb* v. *Caldwell*, 16 id. 486; *Frund* v. *Michaelis*, 15 Abb. [N. C.] 357.)

EARL, J.  The defendants were copartners in the mercantile business at Perry, Wyoming county, under the firm name of Williams & Co., and in their firm name, they executed a note to the plaintiff for borrowed money.  It commenced this action and obtained an attachment against them on the ground that they had assigned their property with intent to defraud their creditors.  They made a motion to set aside the attachment, based upon the same papers upon which it was granted, and the motion was denied at the Special Term, and the decision there was affirmed at General Term, and then the defendants appealed to this court.

The allegation of fraud against the defendants is based upon the following facts:  At the time the defendants became partners, Helen A. Williams owed E. M. Clark about $800, and for that indebtedness they gave him their two joint and several promissory notes signed by them.  L. Sophia Williams, however, signed the notes simply as surety for Helen A. Williams, who was and remained the principal debtor.  Thereafter, in February, 1890, the defendants having become insolvent, both as a firm and as individuals, executed a general assignment of all their firm and individual property for the benefit of their creditors, in which they directed the two notes held by Clark to be paid out of the proceeds of the firm property; and the fraud alleged by the plaintiff consists in this direction, the claim being that the notes were not firm debts, but the individual debts of Helen A. Williams, for which L. Sophia Williams was only surety, and that, therefore, it was necessarily a fraud in law upon the firm creditors to appropriate the proceeds of firm property for their payment.

We think the learned courts below fell into error in granting and upholding the attachment upon the grounds specified.  These notes were joint debts of the defendants, for which they were jointly liable to Clark, and it was, therefore, not a fraud to appropriate their joint property for their payment.  Clark could have recovered a judgment upon the notes against the defendants, and could by execution have seized the firm property to satisfy the judgment, and a purchaser at the execution

sale would have obtained a full and absolute title to the firm property purchased. Although the defendants were insolvent, they could have paid these debts either in money or in property belonging to the firm, and in so doing, they would have perpetrated no fraud upon their creditors. As they could pay the debts either with firm money or firm property, we cannot perceive why they could not, through an assignee, direct the same debts to be paid out of the proceeds of the firm property. It certainly cannot be a fraud upon firm creditors to apply firm property to the payment of debts for the satisfaction of which such property could be taken.

It is a mistake to suppose that the firm property is now in the hands of a court of equity for distribution and application upon equitable principles. No suit whatever is pending in equity, and no application has been made to a court of equity in reference to the firm property. The defendants have made an assignment of their firm property authorized by law, and the assignee is to dispose of it, not in accordance with the directions of any court, but in precise accordance with the terms and conditions of the assignment. It may be that if these firm assets were to be administered in a court of equity, according to equitable principles, the court would direct the firm debts to be paid before these debts to Clark, although it is not certain that it would do so, and it is not now necessary to determine whether it would or not. (*Hoare* v. *Oriental Bank*, L. R. [2 Appeal Cases] 589.) These defendants, being jointly liable to Clark, have themselves provided that his claims shall be paid out of the firm assets, and there is no room for the interference of any court. As between him and them his claim upon the firm property is just as meritorious and equitable as the claim of firm creditors.

After the execution of the assignment and the provision made therein for the payment of these debts, L. Sophia Williams had no equitable claim that the firm property should not be applied precisely as she had directed that it should be applied. Hence on the principles of subrogation the firm

creditor can take no equity from her which they can enforce against the firm property, upon principles laid down in the case of *Saunders* v. *Reilley* (105 N. Y. 12), and cases therein cited.

If these notes had been the individual debts of Helen A. Williams, for which L. Sophia Williams was in no way liable, then the provision in the assignment for their payment out of firm assets would have been a fraud upon the firm creditors within the case of *Wilson* v. *Robertson* (21 N. Y. 587). The ground of that decision was that the joint property was appropriated for the payment of an individual debt of one of the members of the firm, for which the other member was in no way liable. But no case can be found holding that it is a fraud upon the firm creditors for the members of a firm to appropriate the firm property to the payment of debts for which they are all liable. It is never a fraud upon the creditors of any person to appropriate his property for the payment of a debt for which he is liable; and so one who is jointly liable with others as a member of a firm or otherwise, may appropriate his individual property for the payment of a joint debt, for the reason that he is liable to pay the joint debt, and his property could be seized by virtue of an execution issued upon a judgment for the joint debt to satisfy the same. (*Crook* v. *Rindskopf*, 105 N. Y. 476.)

No benefit or ultimate advantage is secured to L. Sophia Williams by the appropriation of the firm property for the payment of debts which, as between her and Helen A. Williams are the debts of the latter. Upon payment of these debts there will be in the hands of the assignee a claim for the reimbursement of the firm against the individual estate of Helen A. Williams. That claim will be in the hands of the assignee to be administered and disposed of under the assignment, and no benefit therefrom can come to either member of the firm until after the payment of all the firm and individual debts.

We, therefore, see no reason to doubt that the assignment was valid and free from the imputation of fraud.

The orders of the General and Special Terms should be reversed and the motion granted, with costs in all the courts and ten dollars costs of the motion.

All concur.

Order reversed.