(47 App. Div. 585.)

HESS v. W. & J. SLOANE.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
    A new trial will be granted for newly-discovered evidence, where it is more than likely to change the result.

2. SAME—DILIGENCE.
    That the newly-discovered evidence could have been produced on the trial does not afford ground for denying a new trial, when there was no reason to suppose it was material.

3. SAME.
    A delay of six months before making a motion for a new trial for newly-discovered evidence is not sufficient ground for denying it, where there has been much difficulty in ascertaining the whereabouts of the witnesses, and in securing and learning the contents of books of account formerly kept by them, as officers of a corporation which has been dissolved.

4. SAME—IMPEACHMENT OF WITNESS.
    When the main object of the newly-discovered evidence is to contradict a witness on a material issue, it will afford ground for a new trial, although it may also impeach him.

5. SAME—CUMULATIVE EVIDENCE.
    That the newly-discovered evidence is cumulative does not, of itself, afford ground for denying a new trial.

Appeal from special term, New York county.

Action by Charles A. Hess, assignee, etc., against W. & J. Sloane. From an order denying a new trial for newly-discovered evidence, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Selden Bacon, for appellant.

Louis Marshall and M. G. Holstein, for respondent.

RUMSEY, J. This action was tried in April, 1899, a verdict rendered for the plaintiff, and a motion for a new trial on the minutes

was denied by the justice who heard the case. In the month of October, 1899, the motion for a new trial, upon the ground of newly-discovered evidence, was made before another judge, and was denied. This appeal is taken from the order denying that motion.

The action was brought originally by one Sayles, and was continued in the name of his assignee for the benefit of his creditors, who is the present plaintiff. The defendant is a corporation. The action was brought to recover the amount of a promissory note for $3,500 made by Foster Bros. on the 20th of June, 1893, and indorsed by Sayles, the original plaintiff. When that note fell due, it was protested for nonpayment, and was subsequently paid by the indorser, who brought this action to recover the amount paid, upon an allegation that he indorsed it in reliance upon an agreement made by the managing agent of the defendant that, if he would do so, the defendant would take care of it, and that he need not worry about it.

The undisputed facts in the case were that Foster Bros., the makers of the note, having rented the New Amsterdam Hotel, had applied to W. & J. Sloane, the defendant, to furnish it, so that they could carry on the business of hotel keeping, and a contract was made between the corporation and the firm of Foster Bros., as a result of which the defendant bought all the furnishings necessary to carry on the hotel, and the Fosters undertook the management of it. It was claimed by the plaintiff that Foster Bros., in managing the hotel, acted as the agents of W. & J. Sloane, but this was denied by them; the defendant insisting, on the contrary, that Foster Bros. had purchased of it all the furniture which had been put into the hotel, agreeing to pay it $3,000 a month until the whole amount was paid, and until that was done the defendant was to remain the owner of the furniture, and specifically denying that the relationship of principal and agent existed between it and Foster Bros. The issue between the parties at the trial, therefore, was whether Foster Bros. were carrying on the New Amsterdam Hotel as agents of the defendant, and also whether the manager of the defendant had agreed to pay this note if Mr. Sayles indorsed it, and whether Sayles did do so relying upon that agreement. These two questions were submitted to the jury in the judge's charge, and were decided in the plaintiff's favor.

The plaintiff's evidence, tending to show the relationship between the parties, was principally given by Augustus C. Foster, one of Foster Bros., who gave his version of the transactions between himself, representing Foster Bros., and Mr. Allen, the secretary of the corporation, representing it. His testimony was substantially that his firm, having arranged for a lease for the building then being erected, which became the New Amsterdam Hotel, applied to Mr. Allen, the manager of the defendant, to fit up the hotel, so that the firm would be in a situation to carry on the business. He testified, at length, to the conversation had between himself and Allen, which resulted in the proposition by the defendant to supply all the furniture necessary to put the hotel in running condition. In the course of that testimony, he said that the arrangement between the parties was that he and his brother were to carry on the hotel in the interest

of the defendant corporation, each receiving a certain sum per month for their services, accounting to the defendant for the balance, and that this was to continue until the furnishings had been paid for, and that when this had been done, and not before, the goods so sold by the defendant were to become the property of Foster Bros., and the mortgage covering them was to be at an end. In the course of this testimony he said that there was no written agreement between the parties to this end, and when he was confronted with what purported to be a written agreement he admitted that it had been made by the firm, but that it did not contain a full statement of the arrangements between the parties. In this matter he was contradicted by Allen, the manager of the defendant corporation, whose deposition had been taken before the trial, because of his intended departure for Europe; but, in the nature of things, it could not precisely meet the evidence given by Foster, and its contradictions of his testimony were of the most general nature, and did not deny each specific statement of Foster as to what was said and done between them.

As to the inception of the $3,500 note, Foster testified that when he and his brother took possession of the New Amsterdam Hotel, in 1892, they had borrowed from the Sherman Bank $2,000 on their note, which became due on the 20th of February, 1895, and that when it became due they could not pay it, because they had no money in the bank, having paid it all to the defendant, and that he applied to Allen to aid him; that Allen told him to go to the tradespeople who supplied them with goods, and get some one of them to indorse a note for an amount large enough so that they could pay off the $2,000 note and have a little over; and that he thus went to Sayles, and induced him to indorse the note, which he then discounted, and out of the proceeds paid the $2,000 note then due, and paid one-half of the balance ($750) to the defendant, at its request. He testified, further, that when this note came due he insisted upon paying a portion of it, but that Allen declined to let him do so, and, upon Sayles showing a disinclination to indorse a renewal note, Allen told him to tell Sayles that, if he would indorse the note, he (Allen) would see that it was paid when it came due; and that thereupon he went to Sayles, who, upon hearing what Allen had said, indorsed the note, and it was renewed. Sayles testified that he went to Allen before the note was first made, and was told by Allen that, if he would indorse the note, he (Allen) would see that it would be all right, and that Allen gave him a reason why the defendant did not wish to indorse the note. He said that it struck him that Allen wanted the Fosters to make a payment to W. & J. Sloane.

As has been said, Allen's deposition did not precisely meet this testimony, for the reason that it had been taken before the trial. The new testimony presented by the defendant is that of Allen, who has returned from Europe, and who denies categorically the statements of Sayles and the Fosters as to what occurred at the different conversations. There are, in addition, affidavits by various officers of the Sherman Bank, from which it appears that the bank was in liquidation at the time of the trial, and that its books could not be

procured by the defendant to be used on the trial of the action; and it is quite evident from the affidavits that, until the trial of the action, it could not be known that the testimony of the officers of the bank and the contents of its books would be material, because, so far as the pleadings showed, it would only be necessary on the trial to meet the question whether Allen had made the agreement upon which Sayles indorsed the note. The affidavits of the officers of the bank, and the contents of its books, show that Foster Bros. never had a note for $2,000 in the Sherman Bank, nor any other note which fell due on the 20th of February, 1893. It appears that they did have a note for $3,500 at the bank, discounted on the 29th of September, 1892, indorsed by themselves, which fell due on the 1st of February, 1893. It appears, further, that on the 1st of February, 1893, when that note fell due, Foster Bros., instead of having no money in the bank, had somewhat over $7,885.80, and that they deposited on that day, in addition, $800, and that the $3,500 which fell due that day was paid out of their account, leaving a balance, after deducting checks drawn against it, of $4,385.80. It appears, also, that no other note was discounted for Foster Bros. between the 1st day and the 20th of February, and that on the 20th of February the amount of the credit of Foster Bros. was something over $3,100, and that the proceeds of the note for $3,500, amounting to $3,428.25, were put to their credit, so that they had in the bank, after the note was discounted, about $6,600. It is clear, therefore, the check for $750, paid to W. & J. Sloane, on February 20th, might have been drawn against the balance at the bank to the credit of Foster Bros., and that there was no reason why W. & J. Sloane should have desired this discount to have been made. Indeed, no reason is apparent why Foster Bros. should have needed this discount, because their subsequent deposits seem to have kept the account large enough to meet all drafts against it for a considerable time after the 20th of February, so that there was no necessity of using the proceeds of this note. The affidavits also show that the check for $750, on the 20th of February, was given to W. & J. Sloane as a final payment upon a note for $3,000, which became due some time before that date, and all but $750 of which had been paid before. The affidavits further show that Sayles, before this note became due, spoke of it to one of the officers of the bank, and said that he had no occasion to worry about it, because he had a bill of sale on the liquors in the New Amsterdam Hotel as security, which evidence tends strongly to contradict his testimony that he had an agreement with W. & J. Sloane to take up this note, and that he relied upon it.

Without going over the facts shown by the affidavits, it is sufficient to say that they presented a state of facts which, if it had been presented to the jury, would have been more than likely to have produced a different result, because it would have shown that what Foster stated as the occasion for the indorsement of this note was not true, and that there was no reason why Allen should have been interested in the slightest degree in the raising of that money, or why it was necessary to pledge the credit of W. & J. Sloane to secure the discount of that note, and it would undoubtedly have tended to show

that Sayles relied as security for his indorsement, not upon the agreement of Allen, but upon his pledge of the liquors in the New Amsterdam Hotel. The defendant, therefore, made a good case for a new trial, which should have been granted, unless some of the objections were well taken.

The most serious objection was that the defendant was not only negligent because the testimony could have been procured for use at the trial, but was guilty of laches in the long delay before this motion was made. A careful examination of the testimony satisfies us that these objections are not well taken. As has been already said, there was no reason to suppose that the books of the bank would have been material on the trial of the action. There was no doubt that the note for $3,500 had been discounted, and the liability of the defendant rested upon facts which were extrinsic to the note, and there was no reason to suppose that light could be thrown on that part of the case by the books of the bank or by anything that was known by its officers. It is apparent from the testimony of the counsel for the defendant that it found considerable difficulty, not only in ascertaining the whereabouts of the officers of the bank who had left its employ and gone into other business, but also in securing the books and learning their contents, and it does not seem to us that laches was shown in getting testimony which could only be secured with so much difficulty. It is said that the testimony of the cashier as to the conversation with Sayles, in which Sayles stated that he had, as security for his indorsement, the pledge of the liquor, is only important as impeaching the testimony of a witness, and that a new trial will not be granted solely to impeach a witness. Undoubtedly, when the only purpose of testimony is to impeach a witness by showing that his character for truth and veracity is bad, it will not be considered as a basis for a new trial; but, when the main object of the testimony is to contradict the evidence of a witness upon a material issue, it will afford ground for a new trial, although it may also impeach him. But, without regard to the evidence tending to contradict Sayles, there is sufficient in the books and in the affidavits of the officers of the bank to show a state of facts which materially differs from that testified to by Foster, and which, if true, would practically overthrow his evidence; and, although this may be regarded as impeachment of the witness, it is only such impeachment as always follows when the testimony of a witness has been broken down. This testimony is not cumulative, and, if it were, that, of itself, affords no reason why a new trial should be denied. In view of all the facts, we conclude that, in the interest of justice, the defendant should have a new trial, that it may present this disputed evidence to the jury, and get their decision as to the result; and the order is therefore reversed, with $10 costs and disbursements to the appellant, and a new trial granted upon payment of the costs of the former trial. All concur.