---

(59 App. Div. 383.)

### In re DAUCHY.

(Supreme Court, Appellate Division, Third Department. March 6, 1901.)

ASSIGNMENTS FOR BENEFIT OF CREDITORS—PARTNERSHIP AND INDIVIDUAL ASSIGNMENTS—PREFERENCES.

　　Under Laws 1887, c. 503, providing that in a general assignment for the benefit of creditors no preference should be valid, except as to one-third of the value of the assigned estate, a debtor who had joined in a partnership assignment and had also made an individual assignment was entitled in the individual assignment, after preferring a partnership creditor to the amount of one-third of the estate, to direct a pro rata distribution of the balance between individual and partnership creditors.

　　Kellogg, J., dissenting.

Appeal from Rensselaer county court.

Judicial settlement of the accounts of Henry B. Dauchy as assignee for the benefit of creditors of Thomas Lape. From a decree of distribution favoring the Union National Bank of Troy, D. Powers & Sons and the National Bank of Troy appeal. Decree modified.

On the 20th day of November, 1895, the firm of Lape & Dunlop, composed of Thomas Lape and John Dunlop, made a general assignment for the benefit

of its creditors to Henry B. Dauchy. On the same day said Lape and said Dunlop each made a separate individual general assignment for the benefit of his creditors to said Dauchy. The assignee under said firm assignment has duly accounted and distributed the net assets of the assigned estate among the creditors of said firm, but such creditors were not paid in full. The assignee under the individual assignment of John Dunlop never received any property as such assignee. The assignment of said Thomas Lape was in the usual form. It provided for the payment of the lawful expenses of the assignee, and for the payment of wages and salaries actually owing to the employés of said Thomas Lape, and then further provided as follows: "Fourth. To pay and discharge in full the amount of all notes, drafts, bills of exchange, and negotiable instruments for the payment of money, by whomsoever held or owned, made or indorsed by Charles Lape, of the city of Cohoes, Albany county, New York, for the benefit or advantage of the party of the first part, either in his individual business, or as a member of the co-partnership firm of Lape & Dunlop, doing business at Valley Falls aforesaid, or made by the party of the first part, or said firm of Lape & Dunlop, and for the payment of which said Charles Lape may be liable either absolutely or contingently; provided, however, that the aggregate amount due or unpaid upon the said several notes, drafts, bills of exchange, and negotiable instruments, together with the amount of the costs and expenses of drawing and preparing the assignment, shall not exceed one-third in value of the estate hereby assigned, after deducting the salaries and wages of employés hereinbefore named, and the costs and expenses of executing this trust. * * * Fifth. To pay and discharge in full, if the residue of said proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due from the said party of the first part, with interest thereon, without any priority or preference whatsoever, and, if the residue of said proceeds shall not be sufficient to pay the said debts and liabilities and interest in full, then to apply the said residue of said proceeds to the payment of said debts and liabilities ratably and in proportion to the amount thereof, respectively. Sixth. After the payment of all the said debts and liabilities in full, if there should be any remainder or residue of said property or proceeds, to repay and return the same to the said party of the first part, his executors, administrators, or assigns." This proceeding was commenced in the county court of Rensselaer county for an accounting by the assignee of the assigned estate of Thomas Lape. The court found that there remained in the hands of the assignee, applicable to the payment of the preferred and general creditors of the assignor, the sum of $9,601.27. The decree provides in detail for the payment of one-third of this amount upon the preferred claims mentioned in the fourth paragraph of the assignment. The remaining two-thirds of said amount (being the sum of $6,400.85), the decree provides, should be paid and distributed among the individual creditors (including the Union National Bank of Troy) of the said Thomas Lape, to the exclusion of the creditors of Lape & Dunlop. D. Powers & Sons, the National Bank of Troy, and others remain creditors of the firm of Lape & Dunlop after the application of the proceeds of the assigned estate of the firm, and the application of the amount decreed to be paid under the fourth paragraph of the assignment of Thomas Lape. The claims of individual creditors of Thomas Lape amount to more than the $6,400.85 remaining in the hands of the said assignee. This is an appeal by D. Powers & Sons and the National Bank of Troy from the said decree which was entered in the Rensselaer county clerk's office on the 20th day of July, 1900, so far as the same provides for the distribution of said $6,400.85 among the individual creditors of said Thomas Lape to the exclusion of said firm creditors. No appeal has been taken from any other part of said decree, or by any of the other parties to the proceeding.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Henry J. Speck, for appellant D. Powers & Sons.
Benjamin E. De Groot, for appellant National Bank of Troy.
James S. Wheeler, for respondent Union National Bank of Troy.

CHASE, J.　The assignor by the fifth paragraph of the assignment expressly provides for the pro rata payment of individual and partnership debts and liabilities out of the assigned estate.　Smith v. Perine (Sup.) 1 N. Y. Supp. 495; Id., 121 N. Y. 376, 24 N. E. 804; Mills v. Parkhurst (Sup.) 9 N. Y. Supp. 109; Id., 126 N. Y. 89, 26 N. E. 1041; Booss v. Marion, 129 N. Y. 536, 29 N. E. 832.　This paragraph of the assignment not only directs payment of "all the debts and liabilities now due or to grow due" from the assignor, but directs their payment "without any priority or preference whatsoever."　That the assignor intended to include in this paragraph of the assignment the debts and liabilities of the firm of Lape & Dunlop is further shown by his providing in the sixth paragraph of the assignment that after the payment of the said debts and liabilities the assignee should return to the assignor any proceeds of the assigned property remaining in his hands.　It is not claimed that the assignor intended to exclude firm creditors from all benefit under the assignment.　By chapter 503 of the Laws of 1887 it is provided that, in all general assignments of the estates of debtors for the benefit of creditors thereafter made, any preference created therein should not be valid, except to the amount of one-third in value of the assigned estate.　It is claimed by the individual creditors of the assignor that, as paragraph 4 of the assignment provided preferences to the extent of one-third of the assigned estate, the power of the assignor over the assigned estate had ceased, and that his direction to the assignee to pay the balance remaining in his hands upon the debts and liabilities of the assignor, including partnership debts and liabilities, is void.　In the distribution of the estates of debtors where there is no lawful direction by the assignor in regard to the same, partnership creditors are entitled to be first paid out of the partnership property, and individual creditors out of individual property.　In the absence of express directions by the assignor, it is presumed that he intended a distribution of the estate according to recognized equitable rules.　Partnership assets constitute a trust fund for the benefit of partnership creditors.　It is well settled that an insolvent firm has no right to use its assets for the benefit of the individual members of the firm.　The members of a firm having indebtedness that they are unable to pay in full are guilty of a fraud upon their creditors if they authorize or assent to the property of the firm being used or applied to the payment of a creditor of an individual member of the firm.　Such application of the partnership property would be a payment of an indebtedness that the firm and the individual members of the firm, other than the one owing the indebtedness, was neither bound in law nor in equity to pay. The individual property of a person has never been held to be a trust fund for the payment of individual indebtedness, and it is said in the case of Nicholson v. Leavitt, 4 Sandf. 252:

"We know not that the separate property of a partner, even when he is insolvent, has ever been considered as a trust fund which, as such, chancery can reach and administer."

Each individual composing a partnership is individually liable for the partnership indebtedness.　He may appropriate his individual property for the payment of the partnership debt, and his property

·can be seized by execution issued upon a judgment for a partnership indebtedness to satisfy the same. An individual member of a partnership is not only liable in law for the indebtedness of the firm, but a partnership debt is regarded in equity as both joint and several. In re Gray's Estate, 111 N. Y. 408, 18 N. E. 719. The assignor has an undoubted legal right to appropriate by general assignment his. individual estate for the ratable payment of his individual and partnership debts. Bank v. Williams, 128 N. Y. 77, 28 N. E. 33; Crook v. Rindskopf, 105 N. Y. 484, 12 N. E. 174; Wheel Co. v. Fielding, 101 N. Y. 504, 5 N. E. 431; Becker v. Leonard, 42 Hun, 221.

The court of appeals, in Re Gray's Estate, 111 N. Y. 408, 18 N. E. 719, uses this language:

"But, as a partnership debt is regarded in equity as both joint and several, there is an apparent inconsistency in excluding in equity the right of the partnership creditor to share with the separate creditor, where, as in this case, there is no joint estate, and the surviving partner is insolvent."

The object and purpose of the statute of 1887 is stated by the court of appeals in the case of Berger v. Varrelmann, 127 N. Y. 281, 27 N. E. 1065, 12 L. R. A. 808, as follows:

"Before this section was added in 1887 to the general assignment act of this state, the practice which had become so prevalent that it may be said to have become a custom for failing debtors to devote by general assignment the whole or a large part of their estates to the payment of a few preferred creditors, often near relatives, resulted in so much hardship and injustice that the section above quoted was adopted to mitigate the evils arising from the practice."

Although this statute is remedial in its nature, it is in derogation of the common-law right of an insolvent debtor to appropriate his property to the payment of his joint and individual debts, or to one or more of either or both classes. The statute, therefore, should only have a liberal construction so far as is necessary to carry out the remedial purpose for which it was enacted. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. This statute does not in terms prohibit an assignor from providing preferences to the extent of one-third of the assigned estate, and then directing that the residuary of his assigned estate be paid pro rata on his individual and partnership debts and liabilities. The purpose for which the statute was enacted does not require that it be construed as prohibiting any such direction. The creditors of Thomas Lape had no fixed interest or lien upon his individual property. The direction contained in the assignment does not create a legal preference, because both classes of debts are, at law, considered equal. Such direction by the assignor is, at most, a destruction of a preference that might thereafter be created by the application of an equitable rule. The statute should be construed without reference to the equitable rule, and wholly with reference to the common-law right of a debtor to prefer his creditors without restriction. I do not think it can be said that Thomas Lape in and by his assignment created a preference over and above the amount allowed by law. The decree appealed from should be modified so that it will direct the distribution of the remaining fund pro rata among the individual and firm creditors of the assignor, with costs to the appellants payable out of the fund before distribution. All concur, except KELLOGG, J., who dissents.

KELLOGG, J. (dissenting).   The fourth clause of the written as-signment of Thomas Lape, fairly construed, has reference only to the promissory notes "made or indorsed" by Thomas Lape, the assignor. The fifth clause refers only to the individual indebtedness of the assignor.   If the assignment should be otherwise construed, and made to include co-partnership debts, then the creditors of the co-partnership are preferred to the individual creditors of the assignor. They take all the co-partnership assets to the exclusion of the individual creditor, and then share equally in the assets of the individual assignor.   At common law this was permissible, and solely on the ground that the assignor had a right to prefer one creditor over another, disregarding all equitable rules.   It was only by the voluntary exercise of that common-law right that this could be done.   By the exercise of this preferential power the individual creditor might be stripped of all individual assets which by the rules of equity he was entitled to.   This power to prefer was by the law of 1887 limited to one-third of the estate.   As to the remainder, the assignor was made powerless to defeat the existing laws as to equitable distribution. Any different construction would work great hardship to the individual creditor.   If the individual creditor could be permitted to share with the co-partnership creditor, it would be different; but in favor of the co-partnership creditor the equitable rule prevails, and co-partnership property must go to pay co-partnership debts.   The equitable rule that individual property shall go to pay individual debts is as well understood, and the trading world acts upon it in its dealings with the individual.   This rule could not be defeated except by the debtor himself, and his power to defeat it, as curtailed by the act of 1887, leaves the rule in force, as it properly and equitably should be, as to that portion of the assets of the individual set free from the debtor's power to determine to what creditors it should go.