### MILLER v. BREITENBECKER et al.

(Supreme Court, Special Term, Kings County. February 20, 1913.)

1. FRAUDULENT CONVEYANCES (§ 118*)—VALIDITY—ANTECEDENT DEBT.

An antecedent debt from a daughter to her mother is sufficient to support a preferential conveyance, where there was no intent to hinder or delay the daughter's creditors by putting her property in the name of another.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 379–381; Dec. Dig. § 118.*]

2. NEW TRIAL (§ 105*)—ALLOWANCE—NEWLY DISCOVERED EVIDENCE.

In an action to set aside a preferential conveyance by a daughter to her mother, where the validity of the conveyance could not have been supported without the mother's testimony that the debt, which was the consideration for the conveyance, was due from the daughter, newly discovered evidence that in a proceeding in bankruptcy against the daughter's husband the mother testified that the same debt was due her from the bankrupt warrants the allowance of a new trial; the evidence not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

being merely impeaching testimony, but being absolutely inconsistent with the position taken by the mother.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 183, 221–223, 229; Dec. Dig. § 105.*]

Action by William H. Miller against Caroline Breitenbecker, impleaded with Elizabeth Winfield. On motion for new trial on the ground of newly discovered evidence. Motion granted.

Henry E. Heistad, of Brooklyn, for plaintiff.

Herzfeld & Sweedler, of Brooklyn, for defendant Breitenbecker.

BENEDICT, J. This is a motion for a new trial upon the ground of newly discovered evidence in an action which was tried before Mr. Justice Marean at Special Term in April, 1912. It was brought to set aside as fraudulent a conveyance of No. 141 Stratford Road made by the defendant Elizabeth Winfield to her mother, the defendant Caroline Breitenbecker. The plaintiff was a creditor of Mr. and Mrs. Winfield, and his judgment against both of them was docketed in the clerk's office on November 20, 1911, for the sum of $1,050, at 3 o'clock and 21 minutes in the afternoon. On the same day at 10 o'clock and 17 minutes in the forenoon the deed from Mrs. Winfield to her mother was recorded. It bore date on the 14th day of November, 1911, and appears to have been acknowledged by the grantor on November 18, 1911. There was some evidence that the judgment creditor was entitled to enter judgment against the debtors on November 17, 1911, but that at their request he agreed not to enter the judgment immediately, so as to afford an opportunity for the debtors to obtain an extension of the time of payment of the second mortgage then due or about to become due upon said property, and upon their promise that no change should be made in the situation as regards that property to the detriment of the creditor.

[1] The defendant Mrs. Breitenbecker alone defended the action. She claimed that at and prior to the time of the conveyance to her by her daughter the latter was indebted to her "in a large sum of money," and in consideration of such indebtedness and her forbearance to sue upon it the conveyance was made. It is therefore evident that the question before the court was whether the conveyance was made and received in fraud of the daughter's creditor. An actual antecedent debt to her mother would support the transaction if made in good faith. The mother testified upon the trial that the daughter, and not the daughter's husband, was her debtor in the sum of $8,000. During her examination the court said:

"Why, I will find that this deed was made in contemplation of this judgment. Do not worry yourself about that. There is only one thing in this case, and that is whether Mrs. Winfield honestly owed her the money. That is all there is of it. If she did, then this deed will stand; if she did not, the deed will not stand."

As it seems to me, there was a further question to be considered beyond the mere question of the honesty of the debt. Even if the debt were in fact owed, but there was in fact a fraudulent intent to hinder

and delay creditors by putting the debtor's property out of her possession and out of the reach of her creditors for the benefit of the grantor, the transaction might have been held to be tainted with fraud. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532; Metcalf v. Moses, 161 N. Y. 587, 56 N. E. 67. Judge Martin in the Tompkins Case, 149 N. Y. at page 121, 43 N. E. at page 533, says:

"Prior to the amendment of 1887, an insolvent debtor had the right to sell and transfer the whole or any portion of his property to one or more of his creditors in payment of, or to secure, his debts, when that was his honest purpose, although the effect of the sale or transfer would be to place his property beyond the reach of other of his creditors, and render their debts uncollectible. Murphy v. Briggs, 89 N. Y. 446, 452; Knapp v. McGowan, 96 N. Y. 75, 86; Remington Paper Co. v. O'Dougherty, 36 Hun, 79; affirmed 99 N. Y. 673; Williams v. Whedon, 109 N. Y. 333, 337 [16 N. E. 365, 4 Am. St. Rep. 460]; Citizens' Bank v. Williams, 128 N. Y. 77 [28 N. E. 33, 26 Am. St. Rep. 454]; McNaney v. Hall, 86 Hun, 415, 419 [33 N. Y. Supp. 518]. That right existed at common law as an incident to the right of property. It was as complete and perfect as the right to acquire and enjoy it. Indeed, it was upon the principle that a person might acquire, enjoy, and dispose of his property that his right to make a general assignment rested."

The distinction between an honest purpose and a fraudulent purpose is that, if the purpose be to transfer the property to the creditor for the creditor's benefit, it is honest, whereas, if the intention is to transfer it to some one, even though he be a creditor, to hold for the debtor's benefit rather than for the benefit of the creditor, it is dishonest. This distinction was not made in the trial of this case. But, as the judgment pronounced has been affirmed on appeal, the question is not now open for discussion, at least on this motion.

[2] The present motion is based upon certain facts which have transpired since the judgment. It appears that in a proceeding in the United States District Court for the Eastern District of New York in bankruptcy, instituted by Abram C. Winfield (the husband), wherein he applied for his discharge from his debts, Caroline Breitenbecker on November 21, 1912, testified as a witness on his behalf to the effect that the same $8,000, which upon the trial of the present action she had testified was owed to her by her daughter, was owed to her by the husband. This is the net result which I reach in reading her testimony in the bankruptcy proceeding. It is evident that both statements cannot stand together. They cannot both be true as made. This irreconcilable variance in regard to a material if not vital issue in this case is not like testimony newly discovered which merely impeaches the testimony of a witness by showing that his character for truth and veracity is bad, and which if the court or jury had had it before them might have authorized a different result. "When the main object of the testimony is to contradict the evidence of a witness upon a material issue, it will afford ground for a new trial, although it may also impeach him." Hess v. Sloane, 47 App. Div. 585, 591, 62 N. Y. Supp. 666, 670.

It thus remains to consider whether, had Mrs. Breitenbecker given no testimony at all in this case, the judgment was supported by sufficient evidence. In my opinion it was not. Mrs. Winfield testified that she and her husband continued to live in the house, 141 Stratford

Road, after the deed had been delivered and up to the time of the trial with the consent of the grantee; and, reading her entire testimony, I am impressed with the fact that bad faith existed, and that it is very doubtful whether an indebtedness by Mrs. Winfield would have been established without the corroboration of the mother's testimony, and whether the court would have reached the conclusion which it did if the mother had not testified at all.

I think that justice will be subserved by granting the motion for a new trial.